IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

THOMAS M. WILLAN AND )
JULIA A WILLAN )
4407 Vilas Hope Rd, )
Cottage Grove WI 53527 )
)
Plaintiff, )  Case No. 19 CV 345 WMC
)
vs. )  COMPLAINT
)
)  DEMAND FOR JURY TRIAL
COUNTY OF DANE, DCZ, )
JOE PARISI, TODD VIOLANTE, )
ROGER LANE, PAM ANDROS, )
SARAH JOHNSON )
210 Martin Luther King Jr Blvd )
Madison WI 53703 )
)
Defendants. )

Respectfully Submitted,

*[signature]*

Thomas M Willan, Pro Se
4407 Vilas Hope Rd
Cottage Grove WI 53527
tom@ironmanbuildings.com
608-438-3103

PARTIES,

1. The Plaintiffs, Thomas M Willan and Julia A Willan are the owners of real property located in the Town of Cottage Grove WI farm preservation district. (Hereinafter referred to as "the Property") with a local address of 4407 Vilas Hope road. And they own and operate Ironman Buildings LLC (Hereinafter referred to as "IMB")

2. The Defendant, County of Dane. Is a quasi-municipal corporation organized under the laws of Wisconsin, with a principal place of business at 210 Martin Luther Kind, Blvd., Madison WI 53703. The County is responsible for regulation zoning in the unincorporated areas of Dane County, including The Town of Cottage Grove. (Hereinafter referred to as "DCZ")

3. Defendant Joe Parisi is sued in his official capacity as the Chief Executive of Dane County Wisconsin. Executive Parisi's official address is 210 Martin Luther Kind, Blvd., Madison WI 53703, County of Dane, State of Wisconsin. Virtually all County agencies, including the DCZ Department report to Executive Parisi as the chief executive of the Dane County, he is the appointing authority and supervisor of the leadership at those agencies. Defendant Joe Parisi is sued in his official capacity as Chief Executive of Dane County Wisconsin.

4. Defendant Todd Violante is sued in his official capacity as the Director of Planning and Zoning of Dane County Wisconsin. Director Violante's official address is 210 Martin Luther Kind, Blvd., Madison WI 53703, County of Dane, State of Wisconsin. Defendant Todd Violante is sued in his official capacity as Director of Planning and zoning of Dane County Wisconsin

5. Defendant Roger Lane is sued in his official capacity as the Administrator of Planning and Zoning of Dane County Wisconsin. Administrator Lane's official address is 210 Martin Luther Kind, Blvd., Madison WI 53703, County of Dane, State of Wisconsin. Defendant Roger lane is sued in his official capacity as Director of Planning and zoning of Dane County Wisconsin

6. Defendant Pam Andros is sued in her official capacity as the Assistant to Director of Planning and Zoning of Dane County Wisconsin. Assistant Andros's official address is 210 Martin Luther Kind, Blvd., Madison WI 53703, County of Dane, State of Wisconsin. Defendant Pam Andros is sued in her official capacity as Director of Planning and zoning of Dane County Wisconsin

7. Defendant Sarah Johnson is sued in her official capacity as the Assistant to Administer of Zoning of Dane County Wisconsin. Assistant Johnson's official address is 210 Martin Luther Kind, Blvd., Madison WI 53703, County of Dane, State of Wisconsin. Defendant Sarah Johnson is sued in her official capacity as Assistant to Administer of Zoning of Dane County Wisconsin

JURISDICTION AND VENUE

1. This action is brought under 42 U.S.C. § 1983, because Defendants, and each of them, acting under color of state law, have deprived Plaintiffs, and the members of the class of persons they represent, of rights secured under the United States Constitution.

2. This action arises under the Fourth, Fifth and Fourteenth Amendments to the United

States Constitution. Accordingly, this Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 (federal question jurisdiction), 42 U.S.C. § 1343 (civil rights jurisdiction) and 28 U.S.C. § 1367 (supplemental jurisdiction).

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because the events giving rise to the dispute occurred in this district and Defendants reside in this district.

4. Secondary jurisdiction for a review of the DCZ comprehensive ordinance adoption prescribed under 59.69 This Court has jurisdiction to hear this case pursuant to Wis. Stat. § 59.69(14), which states, "A landowner, occupant or other person who is affected by a county zoning ordinance or amendment, who claims that the ordinance or amendment is invalid because procedures prescribed by the statutes or the ordinance were not followed, shall commence an action within the time provided by s. 893.73 (1), and a declaratory judgment under Wis. Stat. § 806.04. This Court has jurisdiction to hear this case pursuant to Wis. Stat. § 806.04(1), which states that "[c]ourts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed."

5. Secondary jurisdiction for a review under Section 806.04(2) further states that any person "whose rights, status or other legal relations are affected by a statute . . . may have determined any question of construction or validity arising under the . . . statute . . . and obtain a declaration of rights, status or other legal relations thereunder."

INTRODUCTION

In 2011, the plaintiffs purchased a 2.2 acre parcel of land that was originally part of a 21 acre agricultural parcel. The property was zoned A-1 Exclusive and came with a 2200 square foot farm house that was built in 1973, and a 3000 square foot 1940 something dairy barn with a 20' high hay loft located in the upper barn, a silo and a milk house attached to the front. The property is located in the Town of Cottage Grove Farm preservation district where the local zoning is maintained and regulated by Dane County Planning and Zoning(Defendants). The plaintiffs own and operate out of a converted Milk House office, a company called Ironman buildings LLC that sells Agricultural post frame Barns and buildings to Farmers and agricultural industry businesses. They have spent well over $75,000 restoring the outside of the barn, installing new 600 amp service. The Barn has been used to produce millions of dollars of agricultural accessory revenue since it was built in the 1940s. This specific agricultural Barn is built exclusively for an agricultural purpose which is permitted under both State of Wisconsin chapter 91, ATCP 49 and Dane county zoning FP-B zoning district. The plaintiff's property as a matter of law, is allowed by law to be used for an agricultural accessory purpose under both State law and Dane county ordinance as it has been since 1940s and has continued since 2011 when the plaintiffs purchased the property. As a result of the new "adopted zoning ordinance" and the defendants reclassifying the property in a substandard zoning district RR-2, the defendants have deprived the plaintiffs of the permitted agricultural property rights and have threatened the Plaintiffs with legal action if the Plaintiffs use their property for permitted agricultural purposes.

Plaintiffs' Section 1983 claim is extensively laid out below but, this case is twofold: First, the defendants violated Plaintiffs' substantive due process rights by depriving them of a fundamental right. By taking outright the property zoning A-1 exclusive in 2013 and the Ag-2 in 2019, that carried a permitted right to use the Dairy Barn for an agricultural accessory use in the previous zoning ordinance, which is the subject

of this action (referred to in the Complaint as the "adopted zoning ordinance"), the Defendants have taken the Plaintiffs property(Dairy Barn) interest for public use without compensation, that violates the Plaintiffs civil rights under the 5th and 14th amendment to the federal Constitution. These illegal constitutional actions by the defendants have caused serious financial hardship to the plaintiffs.

Plaintiffs' Second Section 1983 claim, the Defendants violated Plaintiffs' procedural due process rights by failing to undertake proceedings to determine the extent to which the adopted zoning ordinance took away parcel rights by classifying plaintiffs property RR-2 instead of FP-B, and failed to acknowledge the plaintiffs June 28, 2018 request for zoning under FP-B. The County Board approved the revised zoning ordinance of this parcel according to a substandard zoning classification, used by the defendants to take away the plaintiffs property, that had a permitted right of use under the former ordinance in violation of the Plaintiffs civil rights under the 4th and 14th amendment

By changing the plaintiffs zoning classification in 2013 from AG-1 exclusive in a farm preservation district to AG-2 and RR-2 in a farm preservation district, the Defendants have deprived Plaintiffs of their beneficial interest in their permitted use to use their agricultural accessory building, to run agricultural accessory businesses out of, under their previous zoning classification, that by defendants reclassifying to RR-2 the defendants have made a regulatory taking of the plaintiffs agricultural accessory building without due process of law. Specifically, Defendants failed to provide a meaningful process to determine the right zoning classification that fit the plaintiffs current permitted uses, during the complete zoning comprehensive revision resolution that passed on January 19th by the common council of Dane county, resulting in a violation by the plaintiffs constitutional rights to continue to use the "Barn" for an agricultural accessory use as defined by Wis stat. 91.01

COMPLAINT

1. Dane County has certified their zoning ordinance under Wisconsin section 91 stats and have agreed to carry out the Wisconsin legislature's mandates under chapter 91 which mandates special treatment to farming, farm tracts, farm land, farm buildings and the preservation of farms, farm tracts, farm lands, and farm buildings.
2. The Plaintiffs original property was an 80 acre parcel that had a farm house built in 1973 and has a 1940 something Dairy Barn that was featured in a book in 1958, called Farms of Dane County. This specific dairy barn as built, is exclusive to an agricultural or an agricultural accessory use as defined by Wisconsin statute chapter 91 and ATCP 49. The lower level with short ceilings was used for milk production, the high arching 20' ceiling was used for hay storage, the attached silo was used for silage and the attached milk house was used for milk storage.
3. This specific barn was continually been used for, crops, milking and hay storage into the 1990s when the next owner bought the property in 1997. As part of the purchase 1997 deal, 18 acres were split off from a 20.1 parcel leaving the 2.1 acre barn and house parcel and an 18 acre parcel for crops. The 18 acres were leased for crop production and the barn was used for raising chickens and agricultural accessory uses. Due to a problem with DCZ accepting paperwork unlawfully in 1997 when the lot split was determined by DCZ, to be null and void with the zoning resorting back to ag-1 exclusive and this first came to light in 2012.
4. Under Wis 91.01 (5)(a) the plaintiff's property is defined as a "base farm tract" in a farm preservation district. The property is dedicated in a Farm preservation district, in the Town of Cottage Groves comprehensive plan and is dedicated as a matter of law that the Zoning

4

regulations be administered according to the certified rules and regulations under Wisconsin section 91 known as the Wisconsin Farm preservation act.

5. The plaintiffs in 2011, purchased the 2.1 acre parcel which was zoned A-1 Exclusive, in the Town of Cottage Groves Farm preservation district. The property came with a 2 bedroom house built in 1973 along with a Large Dairy barn from 1948 circa. The 1997 owners still own the other 18 acres that they lease out for crops.
6. The plaintiffs since they purchased the property in 2011, they have used a portion of the farm tract to produce tomatoes and assorted vegetables for sharing with the neighbors, eating and canning. They also have a small gold fish farm in the overflow pond giving gold fish to children who visit the farm. And the plaintiffs reside in the farm house.
7. Since 2010, the plaintiffs own and operate an Agricultural accessory business called Ironman Buildings LLC out of a Barn Office . (IMB) Ironman buildings, sells and contracts to build agricultural accessory barns directly to farmers, all around Wisconsin, Illinois and Iowa. They moved IMB to the property in 2011.(See ironmanbuildings.com)
8. Since 2011, the plaintiffs have invested considerable time and money fixing the property and preserving their 1940 something Barn to be used for a permitted agricultural accessory use to operate IMB, their agricultural accessory business out of under chapter 91 Wisconsin Statutes.
9. Due to the Agricultural economy being stagnant the last 3 or 4 years, most all farmers are losing money. As farmers are not purchasing farm buildings, like IMB produces. IMB has suffered greatly financially. IMB has produced over 12 million in revenue since they moved to the property.
10. As a result of DCZ actions in this suit, the revenue for IMB has dropped from a high of 2.2 million a year in 2013 to 400k in 2018.
11. With the Wisconsin agricultural economy in the tanks, and IMB needing a new source of revenue, started exploring options with DCZ to one day showcase our beautiful restored barn by sharing with the public through renting it out to third party private individuals for private events for their family, friends and neighbors.(Agricultural themed Weddings, family reunions, birthday parties)
12. Under Wis Stat 59.69 DCZ is the primary zoning administrator for rural townships in Dane County including the Town of Cottage Grove where the plaintiff's property is located.
13. On January 17, 2019, the Dane County Board of Supervisors adopted 2018-OA-20, which comprehensively revised the Dane County Zoning Ordinance (Chapter 10, Dane County Code). This represents the first comprehensive revision in the county zoning ordinance's history.
14. The Town of Cottage Grove adopted the new comprehensive plan on February 9, 2019.
15. Defendant Roger Lane who possesses no formal legal, zoning or college degree, is in charge of administering all of DCZ, and is designated by ordinance, the sole permit issuing agent, enforcement agent, and its sole legal expert on all of DCZ ordinances.
16. Defendant Pam Andros who possesses no formal zoning degree, who was in charge of administering post cards in June of 2018, by U.S. mail to all the citizens of Dane County regarding the upcoming comprehensive zoning change and what a property's new zoning code was going to be arbitrarily reassigned by defendant Lane.
17. Prior to the new comprehensive plan being adopted by either government entity, the plaintiffs received a rezoning card in the mail from DCZ in June 2018 explaining what DCZ thought our new zoning district code should be. On June 28, 2018 the plaintiffs sent an email to the defendant Roger Lane, Defendant Andros, and the Town of Cottage Grove declining that their parcel be put into RR-2 and that they wanted to be put in FP-B zoning.

5

18. The state of Wisconsin grants DCZ the authority under 59.69 to blanket amend the ordinance, but the statute doesn't grant DCZ the authority to change zoning classifications that effect a property permitted rights without the property owners' permission. The Card sent by DCZ was the only notification in this case the plaintiffs received, and the plaintiff's response was what the owners gave DCZ permission to change their zoning classification to under the new ordinance.
19. Since any zoning request changes must be done through chapter 59.69 and a comprehensive zoning adoption is a part the process of, the plaintiffs property had to be rezoned and reclassified as part of the comprehensive adopted plan. The plaintiffs expressly requested FP-B by email to Defendant Lane and Defendant Andros, the request was never objected to by either of the defendants, and as a matter of law is defined under Wis Stat. 91.01(5) in which the description of the zoning district, the plaintiffs as a matter of law were entitled to be rezoned FP-B under 59.69.
20. The defendants never notified the plaintiffs of any objection to the FP-B zoning classification or even responded to Plaintiff's June 28, 2018 email request to be rezoned FF-B. In violation of constitutional due process.
21. On March 6, 2019 Plaintiffs were inquiring with DCZ by email, that they were thinking of possibly renting out their historic fixed up restored barn for agricultural purposes to private individuals. The Plaintiffs were informed in the denial letter that DCZ had put them in RR-2 zoning as part of the denied the right to use their barn as an incidental use for agricultural accessory uses.
22. DCZ in June of 2018 was negligent, willful and deliberate and as a matter of law was required to zone the plaintiffs property FP-B, under the adoption of the comprehensive plan adoption. DCZ had every opportunity to object to FP-B zoning request of the plaintiff's property into the requested zoning district, but they refused to communicate anything, including responding to the June 28, 2018 email request.
23. DCZ is now made a regularity taking of the plaintiffs Barn which denies the plaintiffs, as purchased the legal right to use the permitted barn to produce income using it in the Agricultural accessory business in a farm preservation district, as the barn has done since it was built in the 1940s.

## FIRST REGULATORY TAKING OF PLAINTIFFS PROPERTY WITHOUT DUE PROCESS UNDER COLOR OF LAW

24. Plaintiffs reallege and incorporate by reference each of the allegations set forth above.
25. The Defendants are in charge of writing, administering and enforcing the provisions of chapter 10 DCO under the authority Chapter 59, and 91 of the Wisconsin Statutes.
26. That on or about January 9, 2013 Defendant Violante and Defendant Lane became aware of an issue with the 1997 rezoning of the plaintiff's property.
27. Defendant Lane responded on January 10, 2013 with what the defendants were required to do to correct the issue. That Defendant Lane said we had to rezone because we were zoned A-1 Exclusive and because our property did not have 35 acres, we were in violation of the zoning ordinance because of a substandard lot the plaintiffs had to rezone the property.
28. Defendant Lane was negligent, willful and deliberate because he failed to disclose the fact and as a matter of law, under A-1 Exclusive and chapter 91 the "Farm Preservation act" the plaintiffs already had every the right to operate an accessory agricultural business like Ironman buildings and had permitted uses that are similar to the FP-B zoning district that the plaintiffs requested June 28, 2018.
29. That on or about January 22, 2013 defendant Parisi became aware of the issues with the plaintiffs property and responded to the plaintiffs concerns by email on February 12 and 27th 2013.

6

Defendant Parisi was negligent, willful and deliberate by not overseeing Defendant Lanes illegal, negligent, willful and deliberate actions regarding the plaintiffs property.
30. Defendant Violante was negligent, willful and deliberate by not overseeing Defendant Lanes illegal, negligent, willful and deliberate actions regarding the plaintiffs property.
31. That as a result of those email responses the defendants were added as a third party defendant in Wisconsin Dane County CASE NO. 13CV0452.
32. As a result of the 3rd party complaint, the defendants agreed through their attorneys Ryan G. Braithwaite, Esq. Crivello Carlson, S.C.710 N. Plankinton Ave. Suite 500 Milwaukee, WI 53203 to fix and repair the plaintiffs zoning problems as a result of their negligence in 1997. That on August 16, 2013 as a result of the agreement, the 3rd party Defendants were dismissed by the Court without prejudice from the 3rd party lawsuit.
33. That pursuant to Wis. Stat. § 893.87 and 893.89 the plaintiffs still have statutory rights to refile and recover from the dismissal without prejudice of the 3rd party complaint filed August 16, 2013, for failure to live up to the dismissal agreement.
34. That after making a site visit and discussing the plaintiff's business plan and property use, it was the biased recommendation of Defendant Lane, that the plaintiff's property should be zoned Ag-2 instead of R-1 which was first recommended by Defendant Lane. In 2013 the plaintiffs didn't know anything about zoning, so they took Defendant Lanes expert recommendation and let Defendant Lane file all the necessary paperwork Defendant Lane filled out and sent for the plaintiff's signature. The plaintiffs were not represented by any counsel at the time, agreed in good faith, and just took Defendant Lanes expert opinion that the property could be used for an agricultural accessory business in the Farm Preservation District. Defendant Lane mislead the plaintiffs and committed a fraud against the plaintiffs, when he knew or should have known as a matter of law that the plaintiffs property was already in a the Town Of Cottage Grove Farm Preservation district and under Chapter 91 Wisconsin Farm preservation act, that the zoning district was a better permitted use under 10.121 A-B AGRICULTURE BUSINESS DISTRICT since the IMB was an agricultural accessory business and was better suited instead of defendants Lane, suggested Ag-2 zoning that he obtained for the plaintiffs.
35. On June 1, 2017, the plaintiffs became aware that Defendant Lane did not possess any expert legal, zoning, or college degrees qualifications administering DCZ.
36. Defendant Parisi was negligent, willful and deliberate in hiring and overseeing Defendant Lane as DCZ, zoning administrator, who without any expert legal, zoning, or college degrees has now taken the Plaintiffs property in violation of the 5th and 14th Amendment to the United States constitution and has threatened legal prosecution for any permitted use associated with the agricultural accessory business.
37. Defendant Violante was negligent, willful and deliberate in hiring and overseeing Defendant Lane as DCZ, zoning administrator, who without any expert legal, zoning, or college degrees has now taken the Plaintiffs property in violation of the 5th and 14th Amendment to the United States constitution and has threatened legal prosecution for any permitted use associated with the agricultural accessory business.
38. That on or about October 24, 2013 the Plaintiffs property was ultimately rezoned by the board from A-1 Exclusive because Defendant Lane told the plaintiffs, they could not be ag-1 exclusive because they did not have 35 acres. And that the plaintiffs property were put under AG-2 taking away the same permitted rights and privileges that AG-1 exclusive in a farm preservation district.
39. As a result of the defendants negligence in 1997, plaintiffs property was required to be rezoned by the defendants in 2013, Defendant Lane under color of law, picked ag-2 zoning, with the full knowledge of Defendant Parisi, and Defendant Violante who has conspired against the plaintiffs

7

for the sole purpose to take permitted property rights away without compensation in violation of the 5th and 14th amendment to the constitution.

40. Since 2013, Defendant Lane has directed county personnel to trespass upon the plaintiff's property for the sole purpose of creating all sorts of alleged zoning violations and commenced a lawsuit that cost the plaintiffs over $15,000 in attorney fees, fines and court costs defending what was and is legal under the plaintiffs previous zoning district A-1 Exclusive.

41. That Defendant Lane's deliberate and malicious actions under color of law to harass, stalk, terrorize, trespass, issue stop work orders, change zoning classifications without due process, forcing the plaintiffs to litigate a right he illegally changed under color of law, in 2013 and again in 2019, that these deliberate, malicious actions of the defendants have continued to violate the Plaintiffs property rights under the 4th, 5th and 14th amendment to the United States Constitution and the Constitution and laws of Wisconsin.

SECOND REGULATORY TAKING OF PLAINTIFFS PROPERTY WITHOUT DUE PROCESS

42. Plaintiffs reallege and incorporate by reference each of the allegations set forth above.

43. Wis. Stat. § 59.69(5)(d) allows the board by a single ordinance repeal an existing county zoning ordinance and reenact a comprehensive revision thereto in accordance with this section. "Comprehensive revision", in this paragraph, means a complete rewriting of an existing zoning ordinance which changes numerous zoning provisions and alters or adds zoning districts. The comprehensive revision may provide that the existing ordinance shall remain in effect in a town for a period of up to one year or until the comprehensive revision is approved by the town board, whichever period is shorter. If the town board fails to approve the comprehensive revision within a year neither the existing ordinance nor the comprehensive revision shall be in force in that town. Any repeal and reenactment prior to November 12, 1965, which would be valid under this paragraph is hereby validated.

44. On January 17, 2019, the Dane County Board of Supervisors adopted 2018-OA-20, which comprehensively revised the Dane County Zoning Ordinance (Chapter 10, Dane County Code). This represents the first comprehensive revision in the county zoning ordinance's history. The Town of Cottage Grove adopted the new comprehensive plan on February 9, 2019.

45. Six months Prior to the adoption of the new ordinance, the Plaintiffs in this case were notified by DCZ through a mailing that under the new ordinance, their property would be rezoned RR-2. The card was void of any other information what the homeowner could do if they had issues with the new zoning ordinance.

46. Within one week of receiving the post card, On June 28, 2018 the plaintiffs notified the defendants by email, including Defendant Roger Lane, and Defendant Pam Andros in this case, "that Plaintiffs received a card in the mail last week suggesting our lot located at 4407 Vilas Hope Rd in the Town of cottage Grove be rezoned from AG-2 to RR-2? We respectfully declined the RR-2 classification and expressly request that the plaintiffs property parcel be moved into FP-B Farmland preservation business zoning district. This classification clearly fits into the State of Wisconsin farm preservation plan, the new Dane County ordinance, the towns comprehensive farm preservation plan, and our earlier discussions with the Town Board, Roger Lane and the zoning committee, regarding our current and future land use of our property. I was out of town and missed the meeting last night at the town hall. We look forward to working with Dane County and the Town to make this an easy process, so we are open to other reasonable suggestions. Please respond in writing to let us know what we have to do to make this happen?

8

47. The Plaintiffs received 2 responses, one on June 28, 2018 from Defendant Andros stating, "I am out of the office and will return on the morning of Monday July 9th. If you would like to reach someone immediately, please call 608-261-9780 and dial 0 to reach a receptionist. If you have questions about the postcard you received in the mail, you can also contact Curt at 266-4183. The second person also responded on June 28, 2016, was a Town official Mike Duplayee, stating, "Mr Willan ... This was merely a function of the Dane County Board to try and 'solve' some past problems concerning Act 10." These were the only 2 written responses regarding the zoning change card, ordinance revisions and the requested rezoning FP-B for the plaintiff's property as part of the zoning ordinance adoption by the board.
48. That on February 14, 2019 after inquiring with Town chairperson Kris Hampton, regarding our zoning request from June 28, 2019, Where Chairman Hampton stated, "he did not know what our zoning was and that we the plaintiffs were to contact Defendant Lane.
49. That on February 14, 2019 the plaintiffs inquired by email to the defendants which again included Defendant Roger Lane, Defendant Pam Andros, and also included a CC copy to Dane County Corporation counsel David Gault regarding their property status. The email included copies of the previous email from June 28, 2018 and included sending them the text copy of the ordinance FP-B showing them that the property as a matter of law was eligible to be rezoned into FP-B during the comprehensive revision. The defendants again never responded to the plaintiff's requests regarding their property.
50. That on March 6, 2019 after never hearing from the "defendants" regarding the property being zoned, the "plaintiffs" sent another email inquiry about business possibilities for the property.
51. That on March 7, 2019 Defendants issued a response that does not include any reference to the previous emails requesting FP-B zoning, even though our property under of statue of law and ordinance is legally eligible to that FP-B zoning. Instead the defendants deliberately and with malice, illegally withhold for the right to be zoned FP-B and what steps were required on June 28, 2018 when the Plaintiffs formally and in good faith inquired into FP-B zoning amendment as part of the comprehensive amendment.
52. That on March 8, 2019 the plaintiffs sent in an email request to Defendant Lane, requesting a zoning permit to extend the barn and repair snow issues on both sides of the barn and to put a deck on one side. Then later in the day a second request was sent with new drawings and revised paperwork. The barn and property as a matter of law, legally met all the DCZ ordinance requirements for the additional space and repairs.
53. That after not hearing anything regarding the request zoning permit, the plaintiffs on March 10, 2019 sent another email request with an attached formal letter clarifying the plaintiff's position.
54. That on March 11, 2019 the defendant Lane had one of his assistants send a clarification letter and email requesting additional information to process the permit.
55. That on March 11, 2019 defendant Lane sent another reply letter clarifying his position that the plaintiffs were zoned in RR-2 and could not have weddings in their barn because he was considering it an indoor assembly. And if we were aggrieved, we could appeal to the board within 30 days.
56. That on March 11, 2019 plaintiff responded by email letter and informed Defendant Lane that the plaintiff was submitting new drawings and paperwork and I would be down March 12 or 13th, 2019 to pick up the zoning permit to extend and repair the plaintiffs barn.
57. That on March 12, 2019 the plaintiffs sent revised drawings and a response for any additional clarification that was needed and a request to come pick up the legal zoning permit that met all the DCZ ordinance requirements for the additional space and repairs.

9

58. That on March 12, 2019 the Defendant Violante sent a letter of denial of the legal zoning permit that met all the DCZ ordinance requirements for the additional space and repairs.
59. That on March 13, 2019 the plaintiffs sent clarification that they were not requesting a zoning permit for a wedding barn, that they were requesting a zoning permit that met all the DCZ ordinance requirements for the additional space and repairs to the barn.
60. That on March 13, 2019 Defendant Violante an email to set up a meeting with Defendant Violante, defendant Lane, Defendant Andros, Sara Johnson, and Town chairman Kris Hampton. The meeting was set for 11:30 AM March 14, 2019 room 116 City County building.
61. A meeting was held with the listed participants above. That at the meeting of March 14, 2019 after some conversation the plaintiffs requested again to be placed in the FP-B zoning district and to issue the zoning permit request for the barn extension and repair. The Town chairman of Cottage Grove, Kris Hampton, verified for the defendants that the property was located in the towns Comprehensive Farm Preservation district and qualified for FP-B zoning. That under the ordinance the plaintiffs were legally able to be in the FP-B zoning district. The defendants verbally denied the request for rezoning and the requested zoning permit.
62. That on March 14, 2019 after the meeting, by email communications, the plaintiffs formally asked and demanded Defendant Violante, and the rest of the defendants for the zoning permit for the barn extension and for a rezoning to FP-B like was requested on June 28, 2018.
63. That Defendants have never responded to any other emails or requests.
64. On March 15, 2019 The Zoning departments informal letter filled out by an unqualified no formal legal degree in Zoning denying constitutional rights is not binding under Federal or Wisconsin law.
65. Property owners, such as Plaintiffs, face continued uncertainty as to the legality of their property rights This litigation seeks to bring certainty to the existing statute and to bring an end to the back-and-forth that has cast a dark shadow over the future of Plaintiff's businesses.
66. The business models of the Plaintiffs were built on and have grown around owning property in a farm preservation district and Chapter 91s interpretation of "Farm Preservation act" – allowing existing farm tracts no matter what their size, in a legal Farm Preservation District to operate IMB legally in the Farm accessory business as defined by Chapter 91 and agreed to by DCZ as their certification to the state of Wisconsin that they will adhere to farm preservation. The Plaintiffs are now subject to business losses and the possibility of criminal penalties due to the significant uncertainty in regarding the interpretation by DCZ of the "Farm Preservation act" under Wis. Stat. § 91 as it relates to their ordinance under chapter 10 DCO and plaintiffs property.
67. That the defendants were willfully, deliberately negligent with the laws of the State of Wisconsin and the ordinance of Dane County into the plaintiffs good faith effort of June 28, 2018, and subsequent requests to amend the ordinance adoption. A one stop legal right to get the correct zoning to allow the plaintiffs the continued legal right to make money off the farm tract property. This property of the plaintiffs, as a matter of law, has been allowed unappeased to make the property owners the right to make money from the farm tract, up until the plaintiffs, which the defendants have for 8 years now continued a, deliberate, willful, negligent act of terrorism that violates the plaintiffs constitution rights under, 4, 5 and 14th amendment to the United States Constitution and the laws and Constitution of the State of Wisconsin.

DECLARATORY RELIEF

68. Plaintiffs reallege and incorporate by reference each of the allegations set forth above.

10

69. The confusion and doubt regarding the interpretation of "The Farm Preservation Act," as that term is used in Wis. Stat. § 91.09(1) by various county officials charged with enforcing that statute, is creating harm to the Plaintiffs.
70. Plaintiffs may bring pre-enforcement challenges to statutes. "The whole philosophy underlying the Uniform Declaratory Judgments Act is that it enables controversies of a justiciable nature to be brought before the courts for settlement and determination prior to the time that a wrong has been committed or threatened." Borden Co. v. McDowell, 8 Wis. 2d 246, 256, 99 N.W.2d 146 (1959).
71. Plaintiffs "do not need to await actual legal action or even a clearly expressed threat of legal action against them in order to have standing for a declaratory judgment." Planned Parenthood of Wisconsin, Inc. v. Schimel, 2016 WI App 19, ¶18, 367 Wis. 2d 712 N.W.2d 604. See also Wagner v. Milwaukee Cty. Election Comm'n, 2003 WI 103, ¶14, 263 Wis. 2d 709, 666N.W.2d 816 ("Once the gun has been cocked and aimed and the finger is on the trigger, it is not necessary to wait until the bullet strikes to invoke the Declaratory Judgment Act."). Pursuant to Wis. Stat. § 806.04, Plaintiffs seek and are entitled to a declaratory judgment clarifying their rights and determining that their property the right of an accessory use pursuant to FP-B and the "Farm Preservation Act " subject to rights or zoning permit requirements under Wis. Stat. § 91.
72. There exists a substantial, present, and justiciable controversy between Plaintiffs and the Defendants with respect to the property rights and use under "The Farm Preservation Act" as that term is used in Wis. Stat. § 91.
73. If this Court does not act, The plaintiffs, including those businesses owned and operated from the property are being harmed under color of law.
74. Plaintiffs herein, will continue to see their businesses harmed by the uncertainty of this situation
75. The plaintiffs could be exposed to criminal sanctions if they operate their businesses as they always have by the defendants using their police powers against the plaintiffs to force submission.

ALTERNATIVE DECLARATORY RELIEF

76. Plaintiffs reallege and incorporate by reference each of the allegations set forth above.
77. The due process rights guaranteed by the Wisconsin Constitution and the Fourteenth Amendment to the United States Constitution are substantially equivalent. See In re Commitment of Hager, 2018 WI 40, ¶17 n. 21, 381 Wis.2d 74, 911 N.W.2d 17.
78. Article I, Section 1 of the Wisconsin Constitution provides in part: "All people are born equally free and independent, and have certain inherent rights; among these are life, liberty and the pursuit of happiness…"
79. Article I, Section 8 of the Wisconsin Constitution provides in part: "No person may be held to answer for a criminal offense without due process of law."
80. The Wisconsin Supreme Court, analyzing criminal penalties, has held that the constitutional requirements of due process prohibit criminal statutes that are too vague, mandating "fair notice and proper standards for adjudication." State v. Courtney, 74 Wis.2d 705,709, 247 N.W.2d 714 (1976).
81. The Wisconsin Supreme Court has directed courts to consider two factors when determining whether a statute is void for vagueness:
82. First, "[a] criminal statute must be sufficiently definite to give a person of ordinary intelligence who seeks to avoid its penalties fair notice of conduct required or prohibited." Popanz, 112 Wis.2d at 173. Second, the "statute must also provide standards for those who enforce the laws

and those who adjudicate guilt." Id. State v. Cissell, 127 Wis. 2d 205, 224–25, 378 N.W.2d 691 (1985) (citing State v. Popanz, 112 Wis. 2d 166, 173, 332 N.W.2d 750 (1983)).

83. DCZ Ordinance Chapter 10 is void for vagueness because the ordinance fails to provide even minimal due process standards to reestablish existing property rights when an ordinance is comprehensively amended.
84. The DCZ ordinance is vague and broad because it fails to provide standards for any professional qualifications, that a zoning administrator must have in issuing legal opinions and issuing legal zoning permits for a building on the plaintiffs zoned property.
85. DCZ ordinance requires a permit for everything, and requires everyone to obtain a zoning permit, but it fails to provide any adequate written due process standards for the issuing officer to determine whether the application meets the legal definition of the ordinance.
86. Dane County by ordinance does not require a Zoning director or administrator to have law degrees to interpret the law, but yet the defendants are allowed by custom, policy, and procedures to deny permits with complex legal issues by denying zoning permits with made up law. In this case, Defendant Violante, or Lane do not possess a law degree and defendant Lane has no degree at all.
87. The next step is the plaintiffs are told by Defendant Lane they can appeal his non legal degree opinion dealing with complex legal issues, to a board of citizens, who also do not possess any law degree and that courts have said, they do not have power to interpret law. The unconstitutional part of the ordinance is defendant's ordinance provides no legal standards for fair adjudication of complex legal opinions made by someone who is legally and academically incapable of making them.
88. Then the ordinance makes a citizen spend a minimum of 90 days just to get to file a circuit court case to interpret complex legal issues that were interpreted by a person with no legal qualifications to interpret the laws. At the minimum, the ordinance to pass constitutional mustard, must include any denial for a permit, be issued by Dane County corporation counsel who are officers of the court and who are properly trained in the law. Where the Wisconsin Constitution, Remedy for wrongs. Section 9. **Every person is entitled to a certain remedy in the laws for all injuries, or wrongs which he may receive in his person, property, or character; he ought to obtain justice freely, and without being obliged to purchase it, completely and without denial, promptly and without delay, conformably to the laws.**
89. The Dane county ordinance is unconstitutional because under Wisconsin chapter 59 zoning police powers, the legislature grants specific zoning powers, not entire power over all departments in Dane County, however the new Dane County zoning ordinance allows Defendant Lane, an unqualified, non-degree, biased zoning administrator complete power to do as wanted to enforce, all of the following violations without any due process to get a zoning permit that they require you to have by ordinance. Defendant Lane is unqualified to interpret all those legal ordinances without being an officer of the court or possess a law degree!
90. (c) Unresolved violations or arrears. The Zoning Administrator may not issue a zoning permit for any property upon which there are: 1. Unresolved violations of this ordinance, or Chapters 11, 17, 14, 74, 75 or 46, Dane County Code, or 2. Delinquent real estate taxes.
91. 10.101(2) Administration, Enforcement and Penalties (e) Application review. The application shall be reviewed to determine if the proposed use of the building and location meets the applicable ordinance requirements and applicable regulations. If the proposal does not meet the requirements or regulations, the application shall be denied and information shall be provided to the applicant identifying the reasons for the denial. The ordinance provides no way to get to step 3 when the plaintiffs are required to defend complex legal opinions issued and decided by a

12

nonqualified, nondegree, biased zoning administrator that has complete power with no standards or oversight standards by ordinance.

92. 10.101(4) Administration, Enforcement and Penalties The zoning administrator and any of his or her designees may enforce violations of this chapter, Chapter 11, Chapter 17, Chapter 75, and Chapter 78, Dane County Code by citation as described in Chapter 2, Dane County Code and s. 66.0113, Wis. Stats. The ordinance provides no standards for the zoning administrator who may or may not be qualified to administer and enforce laws without some legal training on proper zoning administration.

93. Third Party Consultation. If necessary, and expertise is not available from county staff, public academic institutions or from appropriate regional, state or federal agencies, the committee may consult with a third party to effectively evaluate a conditional use permit application. The zoning administrator, or his or her designee, will select the consultant. The applicant for the conditional use permit shall bear all reasonable costs and expenses associated with such consultation. Applicants retain the right to withdraw a pending conditional use permit application if they choose not to pay consultant fees.

94. The third party consultation in the ordinance is unconstitutional for designating no standards other than an unqualified zoning administrator to select a consultant based upon no standards other than an arbitrary designation.

95. Dane County zoning use of the definitions under the "Farm Preservation District" as it is used in Wis. Stat. Chapter 91 Wis does not give a person of ordinary intelligence fair notice of conduct required or prohibited and does not provide standards for those who enforce the laws and adjudicate guilt in relationship to owning property in a Farm preservation district.

96. For years, legislature has defined and interpreted Wis. Stat. § section 91 as excluding agricultural properties in a farm preservation district from certain zoning and permitting requirements. If the Zoning administrator can come to an opposite conclusion without any change being made to the law itself, then ordinary persons, law enforcers, and law adjudicators cannot possibly be expected to understand what conduct the statute is prohibiting.

97. If this Court does not determine that the plaintiff's property does not enjoy the rights and privileges of "The Farm Preservation District" as interpreted under Wis. Stat. § section 91 it should, in the alternative, declare that the DCZ ordinance be nullified for not including the FP-B rezoning requested by The plaintiffs on June 28, 2018 and section 10 violates the due process requirements of the Wisconsin Constitution and is void for vagueness under Wis. Stat. § 59.69(5)(d).

FOR A WRIT OF MANDAMUS COMPELLING THE DEFENDANTS TO ISSUE A ZONING PERMIT FOR THE BARN EXTENSION AND REPAIRS THAT HAVE BEEN DENIED

98. Plaintiffs reallege and incorporate by reference each of the allegations set forth above.
99. DCZ requires all building alterations must get a zoning permit before you start construction
100. The Plaintiffs as a matter of law submitted all the required paperwork for a zoning permit as required by DCZ chapter 10.
101. The defendants have brought previous legal action against the plaintiffs for not acquiring a zoning permit required and then refused to issue one.
102. That the defendants are refusing a zoning permit for the Barn extension and repairs based upon the plaintiffs desires to have weddings in the legally permitted Barn even though the plaintiffs have verbally assured the defendants that they will not have weddings in the Barn until they get the legal questions sorted out, but in the mean time they would like to fix the barn and the Defendants refuse to issue a zoning permit for the Barn extension and repairs in direct

13

violations of the United States Constitution, the laws and the constitution of the State of Wisconsin and the ordinances of Dane County section 10.

103. This is a private property taking for public use without compensation.

104. That the plaintiffs have requested $10,000.00 per day every day the defendants have refused a zoning permit starting March 12, 2019.

105. That as a matter of law the plaintiffs are entitled to a zoning permit regardless of Ag-2. RR-2 or FP-B zoning districts.

106. The elements of a writ of mandamus are: 1) a clear legal right; 2) a plain and positive duty; 3) substantial damages or injury should the relief not be granted; and 4) no other adequate remedy at law. Voces de la Frontera, Inc. v. Clarke, 2017 WI 16, 373 Wis. 2d 348, 891 N.W.2d 803, 15-1152.

107. Substantial physical structural damage is being caused to the 1940 something barn, located in the Town of Cottage Groves Farm preservation district.

108. Wherefore the Plaintiffs ask the court to order the defendants to issue the zoning permit and to compensate the Plaintiffs for damages of $10,000 a day, including punitive for ignoring the plaintiff's rights.

109. Defendant Roger Lane engaged in a conspiracy to take the Plaintiffs, Julia and Tom Willan, personal property rights away for public use without just compensation in violation of the 5th amendment to the United states constitution and The constitution of the state of Wisconsin As a result of the Defendant Lanes' actions, the plaintiffs have spent 8 years of their life trying to use their property for agricultural accessory purpose as described under Wisconsin Chapter 91 and ATCP 49 and they have been wrongfully harassed, fined for a crime they did not commit, in violation of 4th 5th and 14th amendment to the United States Constitution.

110. Rather than continue to perform the Zoning duties necessary to properly administer the ordinance, the Defendants instead conspired among themselves and with others to shortcut the process. Specifically, the Defendants unjustly singled out the Plaintiff, as a potential zoning violator, and then affirmatively endeavored to stretch and manipulate the facts and the evidence to fit the false hypothesis under color of law to deny the plaintiffs a zoning permit on March 12, 2019 to repair and extend their barn and that the plaintiffs were guilty of certain zoning violations and were going to use their property for a non-permitted use.

111. In that regard, the Defendants manufactured "evidence" that falsely implicated Plaintiff. This fabrication of evidence included, but was not limited to, unlawfully trespassing upon the plaintiff's private property without a search warrant, manipulating multiple Dane County agencies to falsely implicate Plaintiff for multiple false violations, by means of improper suggestiveness and outright coercion, all of which violated Plaintiff's constitutional rights.

112. The unlawful manipulation described in the preceding paragraph included making a false statement that **"The Zoning Division, Land and Water Resources, and Dane County Highway Department is experiencing troubles with a particular individual named Tom Willan who lives as 4407 Vilas Hope Road in the Town of Cottage Grove. Mr. Willan does not obtain permits for any of his construction projects. His latest project is to add a second residence (apartment above his garage) to his existing residence. The existing house is a three bedroom house and he claims it is a 2-bedroom. His septic system is designed for a 3-bedroom house. There are several lawsuits pending regarding his actions. I just wanted you to give you heads up on this matter. He may be coming your way to ask about his septic system and obtain approval for his construction project. He always changes his story to get approvals. If he does not get his way, he becomes extremely abrasive. See attached information. I will be placing a notice in Legistar on this property."** And Defendant Lane has

lied that the plaintiffs were making an apartment, and using the House and Barn for non permitted uses when in fact they were not.

113. In addition to the foregoing misconduct, the Defendants also disregarded a lawful request under Wisconsin stat. 19. For public documents regarding the Defendants misconduct and collusion and now has destroyed exculpatory evidence.

114. The policy and practice described in the foregoing paragraph was consciously approved at the highest policy-making level for decisions involving the zoning department, and was a proximate cause of the injuries suffered here by the Plaintiff.

115. In addition to the foregoing, Plaintiff was also the victim of, and his injuries were proximately caused by, a policy and practice on the part of the County of Dane to pursue and secure false zoning violations through profoundly flawed ordinances and biased investigations by unqualified and non-trained employees.

116. Specifically, throughout the 2000s and continuing thereafter, a group of Dane County Zoning employees, including some or all of the Defendants herein, engaged in a systematic pattern of coercion, fabrication of evidence, withholding of exculpatory information, and other illegal tactics, the sum total of which completely corrupted the zoning investigative process.

117. This institutional desire of power to enforce zoning violations more expediently regardless of actual guilt or innocence, in order to enhance Defendant Lane's personal standing in the Department, was known to the command personnel, who themselves participated in the practice.

118. The above-described widespread practices, so well settled as to constitute de facto policy in the Dane County zoning department during the time period at issue, was able to exist and thrive because municipal policymakers with authority over the same exhibited deliberate indifference to the problem.

119. In addition to Plaintiffs, there are now multiple known victims of similar abuses in Dane County, though there may well be many more. At least 3 other citizens of Dane county victimized by this practice were wrongfully given zoning violation actions and were forced to endure expenses as a result of these actions.

120. The widespread practices described in the preceding paragraphs were allowed to take place because Dane County declined to implement sufficient training and/or any legitimate mechanism for oversight or punishment. Indeed, the Department's system for investigating and disciplining county employees accused of the type of misconduct which befell Plaintiff was, and is, for all practical purposes, nonexistent.

121. Defendant Lane who manufactured zoning violations cases against individuals such as Plaintiff had every reason to know that they not only enjoyed de facto immunity from criminal prosecution and/or Departmental discipline, but that they also stood to be rewarded for closing cases no matter what the costs. In this way, this system proximately caused abuses, such as the misconduct at issue in this case.

Count I -- 42 U.S.C. § 1983

Due Process

122. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.
123. As described more fully above, all of the Defendants, while acting individually, jointly, and in conspiracy, as well as under color of law and within the scope of their employment, deprived Plaintiff of his constitutional right to a fair due process procedure.

124. In the manner described more fully above, the Defendants deliberately withheld exculpatory evidence, as well as fabricated false reports and other evidence, thereby misleading and misdirecting the zoning violation prosecution of Plaintiff. Absent this misconduct, the prosecution of Plaintiff could not and would not have been pursued.
125. That Defendant Lanes' misconduct also directly resulted in the unjust prosecution of Plaintiffs, thereby denying them of their constitutional right to a fair trial, and a fair appeal thereof, in violation of the Due Process Clause of the Fourth and Fourteenth Amendment to the United States Constitution.
126. As a result of this violation of his constitutional right to a fair trial, Plaintiff suffered injuries, including, but not limited to, emotional distress, as is more fully alleged above.
127. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.
128. The misconduct described in this Count was undertaken pursuant to the policy and practice of the Dane County Zoning Department in the manner described more fully above.

Count II -- 42 U.S.C. § 1983

False prosecution

129. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.
130. As described more fully above, all of the Defendants, while acting individually, jointly, and in conspiracy, as well as under color of law and within the scope of their employment, caused Plaintiffs to be falsely prosecuted in violation of his constitutional rights.
131. As a result of this violation, Plaintiff suffered injuries, including but not limited to emotional distress, as is more fully alleged above.
132. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.
133. The misconduct described in this Count was undertaken pursuant to the policy and practice of the Dane County Zoning in the manner described more fully above.

Count III -- 42 U.S.C. § 1983

Attempted Coerced Confession

134. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.
135. As more fully described above, one or more of the Defendants used unjustified mental torture against Plaintiffs in an attempt to coerce him to confess to multiple zoning violations they did not commit.
136. As a result of Defendants' unjustified use of mental and police power actions, Plaintiffs suffered great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other consequential damages.
137. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.
138. The misconduct described in this Count was also undertaken pursuant to the policy and practice of the Dane County Zoning Department in the manner described more fully above.

Count IV -- 42 U.S.C. § 1983

Equal Protection

139. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

16

140. As described more fully above, Defendants, all while acting individually, jointly, and in conspiracy, as well as under color of law and within the scope of their employment, denied Plaintiff equal protection of the law in violation of his constitutional rights.

141. Specifically, these Defendants actively participated in, or personally caused, misconduct in terms of abusing Plaintiffs in a manner calculated to coerce and manipulate the plaintiffs property into substandard Dane county zoning classification to secure unjust zoning convictions. Said misconduct was motivated by personal animus and constituted purposeful discrimination; it also affected the plaintiffs in a grossly disproportionate manner vis-a-vis similarly-situated citizens under Dane County zoning regulations.

142. As a result of this violation, Plaintiff suffered injuries, including but not limited to emotional distress, as is more fully alleged above.

143. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

144. The misconduct described in this Count was undertaken pursuant to the policy and practice of the Dane County Zoning in the manner described more fully above.

Count V -- Section 42 USC 1985(3) Conspiracy

Conspiracy to Deprive Constitutional Rights

145. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

146. As described more fully above, each of the Defendants conspired, directly or indirectly, for the purpose of depriving Plaintiff of Real Property and Equal Protection of the law.

147. In so doing, Defendants took actions in furtherance of this conspiracy, causing injury to Plaintiff.

148. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

149. The misconduct described in this Count was undertaken pursuant to the policy and practice of the Dane County Zoning in the manner described more fully in preceding paragraphs.

Count V -- Section 42 USC 1985(3) Conspiracy

Conspiracy to Deprive Constitutional Rights

150. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

151. After the rezoning of the plaintiff's property in 2013, the Defendants reached an agreement amongst themselves to frame Plaintiffs for zoning violations, and to take away property rights without due process and to thereby deprive Plaintiff of his constitutional rights, all as described in the various Paragraphs of this Complaint.

152. Independently, before and after Plaintiff's property rezoning, each of the Defendants further conspired, and continue to conspire, to deprive Plaintiff of relief requested to which he was lawfully entitled, and which would have led to his more timely exoneration of the property taking as described in the various Paragraphs of this Complaint.

153. In this manner, the Defendants, acting in concert with other unknown co-conspirators, including persons who are not members of Dane County zoning, have conspired by concerted action to accomplish an unlawful purpose by an unlawful means.

154. In furtherance of the conspiracy, each of the coconspirators committed overt acts and was an otherwise willful participant in joint activity.

155. As a direct and proximate result of the illicit prior agreement referenced above, Plaintiff's rights were violated, and have suffered financial damages, as well as severe emotional distress and anguish, as is more fully alleged above.
156. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.
157. The misconduct described in this Count was undertaken pursuant to the policy and practice of the Dane County zoning department in the manner described more fully in preceding paragraphs, and was tacitly ratified by policy-makers for the County of Dane with final policymaking authority.

Count VII -- Section 1983

Denial of Access to Courts

158. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.
159. In the manner described more fully herein, each of the Defendants, all while acting individually, jointly, and in conspiracy, denied Plaintiff the right to access to courts by their wrongful suppression and destruction of information and evidence which deprived Plaintiff of constitutional claims against potential Defendants.
160. Other claims were diminished by the passage of years, and the accompanying erosion of evidence necessary to prove these claims against those Defendants.
161. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.
162. The misconduct described in this Count was undertaken pursuant to the policy and practice of the Dane County Zoning Department in the manner described more fully in preceding paragraphs.

Count VIII -- 42 U.S.C. § 1983

Failure to Intervene

163. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.
164. In the manner described above, during the constitutional violations described above, one or more of the Defendants stood by without intervening to prevent the misconduct.
165. As a result of the Defendants' failure to intervene to prevent the violation of Plaintiff's constitutional rights, Plaintiff suffered pain and injury, as well as emotional distress. These Defendants had a reasonable opportunity to prevent this harm, but failed to do so.
166. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.
167. The misconduct described in this Count was undertaken pursuant to Dane County's policy and practice in the manner described in preceding paragraphs.

Count IX -- State Law Claim

Malicious Prosecution

168. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.
169. Defendants caused Plaintiff to be improperly subjected to judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued maliciously, resulting in injury, and all such proceedings were terminated in Plaintiff's favor in a manner indicative of innocence.

18

170. The Defendants identified above accused Plaintiff of criminal activity knowing those accusations to be without probable cause, and they made statements to Judges with the intent of exerting influence to institute and continue the judicial proceedings.
171. Statements of the Defendants regarding Plaintiff's alleged culpability were made with knowledge that said statements were false and perjured. In so doing, the Defendants fabricated evidence and withheld exculpatory information.
172. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.
173. As a result of this misconduct, Plaintiff sustained, and continues to sustain, injuries including pain and suffering.

Count X -- State Law Claim

Civil Conspiracy

174. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.
175. As described more fully in the preceding paragraphs, Defendants, acting in concert with other known and unknown co-conspirators, conspired by concerted action to accomplish an unlawful purpose by unlawful means.
176. In furtherance of the conspiracy, Defendants committed overt acts and were otherwise willful participants in joint activity.
177. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.
178. As a proximate result of Defendants' conspiracy, Plaintiff suffered damages, including severe emotional distress and anguish, as is more fully alleged above.

Count XI -- State Law Claim

Intentional Infliction of Emotional Distress

179. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.
180. The acts and conduct of the Defendants as set forth above were extreme and outrageous. The Defendants intended to cause, or were in reckless disregard of the probability that their conduct would cause, severe emotional distress to Plaintiff, as is more fully alleged above.
181. Said actions and conduct did directly and proximately cause severe emotional distress to Plaintiff, and thereby constituted intentional infliction of emotional distress.
182. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.
183. As a proximate result of Defendants' wrongful acts, Plaintiff suffered damages, including severe emotional distress and anguish, as is more fully alleged above.

Count XIII - State Law Claim

184. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.
185. In committing the acts alleged in the preceding paragraphs, each of the Defendants were members of, and agents of, the Dane County Zoning Department acting at all relevant times within the scope of employment and under color of law.
186. Defendants Dane County is liable as principal for all torts committed by its agents.

Count XII - State Law Claim

Indemnification

    187.    Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

    188.    Wisconsin law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

    189.    The Defendants are or were employees of the Dane County, who acted within the scope of their employment in committing the misconduct described herein.

WHEREFORE, Plaintiffs, JULIA AND THOMAS WILLAN, respectfully request that this Court enter judgment in their favor and against

Defendants, COUNTY OF DANE, JOE PARISI, TODD VIOLANTE, ROGER LANE, PAM ANDROS, SARAH JOHNSON awarding compensatory damages, costs, and attorneys' fees, along with punitive damages against each of the individual Defendants in their individual capacities, as well as any other relief this Court deems appropriate.

JURY DEMAND

Plaintiffs, JULIA AND THOMAS WILLAN hereby demands a trial by

jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

RESPECTFULLY SUBMITTED:

*[signatures]*

PRO SE PlaintiffS