IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

THOMAS M. WILLAN and
JULIA A. WILLAN,

                Plaintiffs,                OPINION AND ORDER

    v.                                                         19-cv-345-wmc

COUNTY OF DANE,
JOE PARISI, TODD VIOLANTE,
ROGER LANE, PAM ANDROS,
and SARAH JOHNSON,

                Defendants.

*Pro se* plaintiffs Thomas M. and Julia A. Willan filed this civil lawsuit against County of Dane, Dane County Executive Joe Parisi, DCPD Director Todd Violante, DCPD Zoning Administrator Roger Lane, and the latter two defendants' alleged "assistants," Pam Andros and Sarah Johnson, respectively.[1] In particular, the Willans claim that all of these defendants are responsible for the rezoning of their property in a manner preventing them from hosting barn weddings, as well as refusing them a variance in violation of their Fourth, Fifth and Fourteenth Amendments rights. (Dkt. #1.) The Willans also claim that defendants engaged in a civil conspiracy to violate those rights and seek civil damages under Wisconsin law for injuries resulting from what they characterize as malicious prosecution, civil conspiracy, and intentional infliction of emotional distress. (*Id*.) Pending before the court is defendants' motion for judgment on the pleadings. (Dkt. #9.) For the following

---

[1] Plaintiffs also name as a separate defendant something called "DCZ," presumably referring to the Dane County Planning & Development, or "DCPD," which defendants point out is not a separate legal entity, but rather a Dane County Department that includes a Zoning and Land Regulation Committee. https://plandev.countyofdane.com (last visited May 26, 2020). Accordingly, DCZ has been removed from the case caption.

reasons, defendants' motion will be granted, and the court will enter final judgment in defendants' favor.

MATERIAL FACTS[2]

In 2011, the Willans purchased a 2.1-acre piece of property in the Town of Cottage Grove (the "Town"), which includes a home and dairy barn. The property was zoned A-1 Exclusive. Since purchasing the property in 2011, the Willans have operated their agricultural accessory barn business, Ironman Buildings LLC ("IMB"), out of the dairy barn. IMB's annual revenue hit a high of $2.2 million in 2013, but dropped to $400,000 in 2018, due in large part to problems in the farm economy.

In 2013, defendants Lane and Parisi notified the Willans that their property was non-conforming with the A-1 District, and Dane County eventually rezoned the property to the Ag-2 District. In June 2018, the Town of Cottage Grove sent the Willans a postcard notifying them that their property was proposed to be rezoned again to the RR-2 District (Rural Residential, 2 to 4 acres) as part of a comprehensive zoning revision by DCPD. (Dkt. #10, at 4.) The Willans did not attend the scheduled meeting for property owners; instead, on June 28, 2018, they sent an email to the Town and to "zoning administrators" purporting to "declin[e] that their parcel be put into RR-2" and requesting "to be put in FP-B [Farmland Preservation – Business] zoning." The Willans received an email response

---

[2] For purposes of defendants' motion for judgment on the pleadings, the following undisputed, material facts are taken from the parties' pleadings and referenced documents, when viewed in a light most favorable to the non-moving party, the plaintiffs. *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (citing *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012)).

2

from the Town, as well as an out of office email from defendant Andros, which provided them with additional numbers to call for immediate assistance. The Willans did not follow up at that time.

Ultimately, on January 17, 2019, the Dance County Board of Supervisors "comprehensively revised the Dane County Zoning Ordinance," and the Town of Cottage Grove adopted the new comprehensive plan effective February 9, 2019. On February 14, 2019, the Willans again sent an email to the Town and "zoning administrators" enquiring about their property status, and on March 6, 2019, the Willans sent an email to DCPD informing them that they "were thinking of possibly renting out" their restored barn to private individuals "for agricultural purposes." After receiving a response from DCPD that their property was zoned RR-2 preventing the incidental use of the barn for "agricultural accessory" purposes, the Willans emailed defendant Lane on March 8, requesting a zoning permit to extend the barn, repair snow damage to the barn, and add a deck to one side of the barn. The Willans sent another email attaching a letter with the same request on March 10.

On March 11, 2019, DCPD Zoning Administrator Lane sent the Willans emails seeking additional information to process their zoning permit but reiterating that the property was zoned RR-2, meaning that the Willans were not permitted to hold weddings in their barn. Lane also outlined the appeals process. After the Willans' request for a permit was denied on March 12, 2019, the parties met on March 14 to discuss the rezoning request and zoning permit. Again, the DCPD Department denied the Willans' requests

based on the property's zoning classification of RR-2, which was confirmed in a letter dated March 15, 2019.

The Willans filed this lawsuit on April 30, 2019, asserting violations of their rights under the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution, and harm under various state tort law theories. With respect to their federal claims, the Willans bring an action under 42 U.S.C. § 1983 alleging that defendants deprived them of due process, committed false prosecution against them, attempted to coerce a false confession from them, violated their equal protection rights, denied them access to the courts, and failed to intervene to prevent the violation of their rights, all acting under color of law. The Willans also claim under 42 U.S.C. § 1985(3) that defendants engaged in a conspiracy to deprive them of their constitutional rights to property, equal protection, and due process. Finally, the Willans bring state claims against individual defendants of malicious prosecution, civil conspiracy, and intentional infliction of distress, as well as claims against DCPZ and Dane County under the theory of *respondeat superior*.

OPINION

Defendants seek judgment in their favor on all of the Willans' claims. A motion for judgment on the pleadings under Rule 12(c) is reviewed under the same standard as Rule 12(b)(6), except that the court considers not only the complaint and referenced documents, but all other pleadings and documents that are incorporated into *any* pleading by reference. *Buchanan-Moore v. City of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009); *United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991). To succeed, "the moving party must demonstrate that there are no material issues of fact to be resolved," despite

4

the court viewing all facts in the light most favorable to the nonmoving party. *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998). While the non-moving party's factual allegations are generally accepted as true, by themselves "allegations in the form of legal conclusions are insufficient to survive" a 12(c) motion. *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (citing *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012)).

Unfortunately for the Willans, their allegations are largely conclusory and, consequently, insufficient to withstand defendants' motion. With respect to their federal claims in particular, the Willans have failed to establish that those claims are ripe for adjudication; in any event, they have failed to allege constitutional violations adequately with respect to any of the names defendants, including Dane County itself.[3] Since the court will enter judgment in defendants favor with respect to all of the Willans' federal claims, the court will also decline to exercise jurisdiction over the remaining state law claims.

I.  Ripeness

Defendants first argue that court does not have subject matter jurisdiction over Willans' federal claims because they are not ripe for review. In considering a challenge under Federal Rule of Civil Procedure 12(b)(1), courts "accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff," but if

---

[3] The defendants also assert a qualified immunity defense on behalf of the individual defendants. Because the Willans have failed to state a claim under either § 1983 or § 1985, however, the court need not resolve this separate affirmative defense.

necessary may "look beyond the jurisdictional allegations of a complaint and evidence to determine whether subject matter jurisdiction exists in fact." *Ciarpaglini v. Norwood*, 817 F.3d 541, 543 (7th Cir. 2016) (citing *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007)). As the party asserting jurisdiction in this case, plaintiffs bear the burden of proof on this issue. *Smart v. Local 702 Int'l Bd. of Elec. Workers*, 562 F.3d 798, 802-03 (7th Cir. 2009); *Craig v. Ontario Corp.*, 543 F.3d 872, 876 (7th Cir. 2008).

Defendants' ripeness argument is grounded in the United States Supreme Court's decision in *Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172 (1985), holding that a Fifth Amendment takings claim is not yet ripe if the plaintiff has not taken the opportunity to seek a variance, meaning any state administrative decision is not yet final. *Id.* at 194-95. Defendants also point out that the Seventh Circuit has applied this same finality test to similar takings claims since *Williamson County*. *E.g.*, *Behavioral Institute of Indiana, LLC v. Hobart City of Common Council*, 406 F.3d 926, 930-31 (7th Cir. 2005).

Applying the finality test to the Willans' federal constitutional claims, defendants point out that Wisconsin statutes set forth the specific process by which the Willans may petition for rezoning and appeal any zoning decisions. *See* Wis. Stat. § 59.69(5). They further point out that the Willans have not even alleged properly petitioning for rezoning under Wis. Stat. § 59.69(5)(e)(1), much less appealing any adverse decision to the Dane County Board of Adjustment under Wis. Stat. § 59.694(4), both of which are established steps in the rezoning process. (*See* Compl. (dkt. #1) ¶¶ 91, 93.) This is true despite the Willans acknowledging receipt of written notification as to how to appeal permitting

decisions. (*Id.* ¶ 55.) Yet the Willans do not allege, and their submissions do not suggest that they ever filed, any rezoning petitions or appealed to the County Board of Adjustment, nor does it appear that they ever sought a formal variance. Instead, they sent emails with requests for permits and rezoning, and they participated in a meeting with Town and DPCZ officials with respect to their request for reconsideration. (Compl. (dkt. #1) ¶¶ 46-62.)

The court will infer that because the Willans received a permit decision with respect to the modifications to their barn, their email application satisfied the DPCZ requirements for that permit request. Similarly, although the Willans did not file a formal petition for rezoning in accordance with Wis. Stat. § 59.69(5)(e)(1), the court will infer from the meeting between the Town, DPCZ and the Willans to discuss their rezoning request, that the Willans' emails were also adequate substitutes for at least an initial petition for rezoning of their property. However, even if those informal communications satisfied the initial petition requirement, there is *no* suggestion that the Willans appealed the denial of their rezoning request to the County Board, much less that there has been any final decision rendered on their petition. *Williamson County*, 473 U.S. at 191.

The Willans argue under *Heck v. Humphrey*, 512 U.S. 477 (1994), that parties are not required to exhaust administrative remedies before vindicating their civil rights in court, but the Supreme Court explained in *Williamson County* that:

> The question whether administrative remedies must be exhausted is conceptually distinct, however, from the question whether an administrative action must be final before it is judicially reviewable. . . [T]he finality requirement is concerned with whether the decisionmaker has arrived at a

7

> definitive position on the issue that inflicts and actual, concrete injury.

473 U.S. at 192. Moreover, while the Supreme Court recently overruled its exhaustion requirement in *Knick*, it left the finality requirement intact. *Knick v. Twp. Of Scott*, 139 S. Ct. 2162, 204 L.Ed.2d 558, 2169 (2019) ("Knick does not question the validity of this finality requirement, which is not at issue here.").

Here, there is no allegation that would support a reasonable inference that Dane County reached a final decision on the matter of the Willans' request. Thus, the Willans cannot allege an actual, concrete injury, and this matter is not ripe for adjudication. *See Unity Ventures v. County of Lake*, 841 F.2d 770 (7th Cir. 1988).[4]

## II.      42 U.S.C. § 1983

Setting aside the ripeness issue, defendants argue that the Willans' allegations do not support any of their purported claims under 42 U.S.C. § 1983. Indeed, while the Willans assert that defendants' zoning decisions violated their Fifth and Fourteenth Amendments, their factual allegations do not support a claim for relief under either

---

[4] The Willans also cite to the Wisconsin's Uniform Declaratory Judgements Act, Wis. Stat. § 806.04, as grounds for this court to issue a declaratory judgment respecting their rights without any legal action having been taken against them. (Compl. ¶¶ 70-71.) The Willans' citation to § 806.04 is flawed in a number of respects. First, a declaratory judgment is a form of remedial action issued when rights have actually been violated, which does not supersede the finality requirement. Second, as explained in Section II & III below, the Willans have not established that their property has been taken, nor that their federal constitutional rights have been violated in other actionable ways. Finally, absent an independent federal claim, § 806.04 is not a reason for this court to exercise supplemental jurisdiction over state law claims as discussed in Section IV below.

amendment.[5]

### A. Fifth Amendment Regulatory Taking

Defendants seek judgment on the merits of Willans' regulatory takings claim. Under the Takings Clause, a "regulatory taking" has occurred when "a particular exercise of the State's regulatory power is so unreasonable or onerous as to compel compensation." *Palazzolo v. Rhode Island*, 533 U.S. 606, 627 (2001). The question is then "whether a regulation has deprived a landowner of 'all economical beneficial use' of the property," *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1015 (1992), "or defeated the reasonable investment-backed expectations of the landowner to the extent that a taking has occurred." *Palazzolo*, 533 U.S. at 607-08. The Willans' allegations do not support a reasonable inference that they have been subject to a Fifth Amendment taking on either ground.

The Willans purchased their property primarily as a residence and with the intention of using the barn as a headquarters for their business, IMB. There is *zero* indication that the rezoning interfered with these expected uses. Thus, they still retain an economically viable use of their property. The only prohibited use is the Willans' March 2019 proposal to modify and use the barn as a wedding venue to remediate reduced revenue of their primary agricultural business, something that post-dated the zoning by

---

[5] The Willans also claim that they were unable to access the courts and subject to Fourth Amendment violations, false prosecution and attempted coerced confession, but they allege *no* facts beyond conclusory statements to support these claims. Accordingly, these claims must be dismissed as well. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of a cause of action, supported by mere conclusory statements, do not suffice.").

about a month. In fact, at least according to the pleadings, the *only* investment the Willans had even made at that point toward a modified approach to their business was to send emails with some drawings and paperwork. (Compl. (dkt. #1) ¶¶ 50-56.) In contrast, the Willans have *not* alleged that they purchased their property with this specific use in mind, nor have they alleged that they committed any significant investments toward this proposed use before the rezoning took effect. As such, they had no vested right in the use of the barn as a wedding venue. *See BBL, Inc. v. City of Angola*, 809 F.3d 317, 329-30 (7th Cir. 2015) (citing 2 PATRICIA E. SALKIN, AMERICAN LAW OF ZONING § 12:16 (5th ed. 2015)) (A property owner who actually made a certain legal use of a property or who has made substantial investments and preparation for that use of a property "in good faith reliance on then-existing zoning regulations" may have a vested nonconforming use right).

Although the DCPD rejected the Willans' implicit requests to rezone the property and modify the barn for their new, proposed use, these actions did not constitute a taking. At worst, they were a "minimal incursion" into the Willans' property rights that did not reach the level of a deprivation of those rights. *See Coniston Corp. v. Hoffman Estates*, 844 F.2d 461, 466 (7th Cir. 1988). Accordingly, defendants are entitled to judgment in their favor on the merits of the Willans' Fifth Amendment takings claim.

### B. Fourteenth Amendment Due Process

Defendants are similarly entitled to judgment in their favor on Willans' due process claims, since they fail to allege any denial of substantive or procedural due process rights with respect to zoning decisions affecting their property. Indeed, if the government action is a "limited, perhaps minimal, incursion into their property rights," then "it is not a

deprivation at all, in the constitutional sense, and the due process clause is not in play." *Coniston Corp.*, 844 F.2d at 466. "Something more is necessary than dissatisfaction with the rejection of a site plan to turn a zoning case into a federal case." *Id*. at 467. Rather, a substantive due process violation occurs when the state exercises "its power without reasonable justification and in a matter that 'shocks the conscience.'" *Bettendorf v. St. Croix Cty.*, 631 F.3d 421, 426 (7th Cir. 2011) (quoting *Tun v. Whitticker*, 398 F.3d 899, 902 (7th Cir. 2005)).

Relevant here, a violation in the context of land use restrictions arise when the government makes "decisions that are arbitrary and unreasonable, bearing no substantial relation to the public health, safety or welfare." *Doherty v. City of Chicago*, 75 F.3d 318, 325 (7th Cir. 1996). As alleged by the Willans, the zoning designation applied to the Willans' property was neither arbitrary nor capricious. To the contrary, it was adopted as part of a deliberative countywide, comprehensive rezoning plan consistent with the nature of similarly situated properties. Moreover, with respect to the permit, it is well within the established authority of Dane County to decide whether a property should serve as a commercial wedding venue. *See* Dane County Zoning Ordinance, DANE COUNTY CODE § 10.242 (2020). Indeed, although the Willans' characterize defendants' actions as depriving him of a fundamental right -- and accuse them of "fabricating false reports," "withholding exculpatory evidence," and "misleading and misdirecting" the process (*see, e.g.*, Compl (dkt. #1) ¶¶ 110, 111), -- the Willans have not alleged any *facts* suggesting that their decisions with respect to the rezoning or permit were arbitrary and irrational. As such, the DCPD's denial of a request to allow uses of a property inconsistent with its

current zoning was "reasonable" for purposes of substantive due process.

"In order to prevail on a procedural due process claim, a property owner must show that he was deprived of a full and fair hearing to adjudicate his rights," *Bettendorf*, 631 F.3d at 427, or that they were deprived of property due to the "intentional but 'random and unauthorized' conduct by an employee," *Doherty*, 75 F.3d at 323 (citing *Hudson v. Palmer*, 468 U.S. 517, 533 (1984)). Again, the Willans made little effort to follow the formal process already in place to contest zoning and permit decisions; instead, rather than submit a formal petition for rezoning, they sent emails, and they followed the same course in requesting a permit to modify their barn. Still, plaintiffs allege, defendants responded to their emails in varying fashion, including with (1) information on the rezoning process, (2) directions on how to follow up on rezoning inquiries, and (3) how to appeal decisions. (Compl. ¶¶ 44-64.) Defendants also met with the Willans outside of the required process in order to discuss their claims. (*Id.* ¶ 61.) If anything, it appears that defendants made *extra* effort to give the Willans the ability to be heard, and there is no indication that any conduct of individual defendants was random or unauthorized. Finally, as the Willans failed to appeal to the Board of Adjustment for a final decision, and thus failed to avail themselves of existing procedures, they cannot now claim that due process was unavailable to them.

### C. Fourteenth Amendment Equal Protection

A government regulation does not violate the Equal Protection Clause if it is reasonable, not arbitrary, and rationally related to a permissible state objective. *Belle Terre v. Boraas*, 416 U.S. 1, 7 (1974). More to the point, zoning ordinances are created under

the state's police power and must be given "every presumption of validity." *Highland Park v. Train*, 519 F.2d 681, 696 (7th Cir. 1975). And even if it is imperfect, a zoning ordinance is constitutional unless it bears "no possible relationship to the state's interest in securing the health, safety, morals, or general welfare of the public and is, therefore, manifestly unreasonable and arbitrary." *Id*.

The Willans claim an equal protection violation through the rezoning of their property based on allegations that: (1) defendants, individually and jointly, personally manipulated them "into substandard Dane County zoning classification[s] to secure unjust zoning convictions"; and (2) this "misconduct was motivated by personal animus and constituted purposeful discrimination [that] affected the plaintiffs in a grossly disproportionate manner" as compared to other Dane county citizens. (Compl. (dkt #1) ¶¶ 140, 141.) In response, defendants argue the Willans' claims are not cognizable in the context of land use planning because such state action requires complex and discretionary decisionmaking which "state officials are entrusted to exercise." *Engquist v. Oregon Dep't of Agriculture*, 553 U.S. 591, 603 (2008).

In *Wroblewski v. Washburn*, 965 F.2d 452, 458 (7th Cir. 1992), the plaintiff alleged that the City of Washburn singled him out for differential treatment due to personal animosity by (1) evicting him from a lease on the City's marina based on his inability to pay, and (2) adopting a policy preventing marina operators from working with him unless they paid what he owed to the City. While recognizing that some of the City's actions may have been influenced by animus toward Wroblewski, the court held that although personal animus made dismissal a closer question, it did not overcome the presumed

13

rationality of the City's classification in that case of plaintiff as a deadbeat was enough to justify its action. *Id*. at 460.

Here, too, the Willans' equal protection claims fail to overcome a rational basis standard. The County's rezoning and the Town's adoption of the rezoning are presumed to be rationally related to permissible government objectives, and the Willans have not alleged otherwise. Even if some of the defendants' actions been motivated by animus -- which is neither alleged nor reasonably inferable from the complaint's allegations -- the Willans have alleged *no* facts to reasonably find that the zoning classification defendants enforced against plaintiffs were not applied equally to others similarly situated, only that the Willans *believed* they were disproportionately affected compared to Dane County citizens generally. However, "[i]nherent in all zoning legislation are statutory distinctions which give rise to claims of disparity of treatment. . . Zoning is not rendered unconstitutional by the fact that any direct benefit the plaintiffs may receive from it is less than the possible burdens it may impose upon them." *Highland Park*, 519 F.2d at 698-97. Accordingly, defendants are entitled to judgment in their favor on the Willans' equal protection claim as well.

## III. 42 U.S.C. 1985(3)

The Willans further claim that the defendants willfully, maliciously, and recklessly conspired to injure them, and that defendants, independently and in concert with unknown persons, conspired to frame them for zoning violations and take away their rights. To state a claim under § 1985(3), a plaintiff must allege that the defendants

14

conspired for the purpose of depriving, "either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws," and that the conspirators did, or caused to be done, an act in furtherance of that conspiracy which injured the plaintiff or his property or deprived him of his constitutional rights. *Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971). Defendants seek judgment on this claim for a number of reasons, but the most salient is that Willans' conspiracy claims against defendants are wholly conclusive in nature.[6]

The Willans support their purported conspiracy claim with assertions such as defendants conspired to take their "property rights away for public use without just compensation," "manufactured 'evidence' that falsely implicated" them in zoning violations, disregarded public information requests, "destroyed exculpatory evidence," and had "a policy and practice on the part of the County of Dane to pursue and secure false zoning violations through profoundly flawed ordinances and biased investigations by unqualified and non-trained employees." (Compl. (dkt. #1) ¶¶ 109-18, 146-49.)

Even construed in a light most favorable to the Willans, the alleged facts asserted to support the conspiracy claims are largely speculative and unsupported. For example, the Willans claim that:

> 109. Defendant Roger Lane engaged in a conspiracy to take the Plaintiffs, Julia and Tom Willan, personal property rights away for public use without just compensation. . . As a result

---

[6] Defendants also argue that: (1) because the Willans failed to state a claim for the underlying constitutional violations required in a § 1985 claim, the conspiracy claims cannot stand; and (2) any claims also fail as a matter of law under the intracorporate conspiracy doctrine, which bars conspiracy claims for conduct by two or more persons who are members of a single business. (Dkt. #10, at 25-27.) Although both arguments appear to have merit, the court need not resolve them since the Willans' allegations are far too conclusory to proceed claim under § 1985 regardless.

15

>of Defendant Lanes' actions, the plaintiffs have spent 8 years of their life trying to use their property for agricultural accessory purpose as described under Wisconsin Chapter 91 and ATCP 49 and they have been wrongfully harassed, fined for a crime they did not commit, in violation of 4th 5th and 14th amendment to the United States Constitution.
>110.  Rather than continue to perform the Zoning duties necessary to properly administer the ordinance, the Defendants conspired among themselves and with others to shortcut the process.  Specifically, the Defendants unjustly singled out the Plaintiff as a potential zoning violator, and then affirmatively endeavored to stretch and manipulate the facts and evidence to fit the false hypothesis under color of law to deny the plaintiffs a zoning permit. . .

(Compl. ¶¶ 109, 110.).  The remaining facts in the complaint related to conspiracy and state law claims (which will be addressed below) continue along the same vein.  (*Id.* ¶¶ 111-18.)

The Willans further allude to harassment, fines, and other unjust treatment at the hands of defendants, but again provide no specific facts to support their claims of unlawful behavior by the defendants.  Instead, they recite a number of additional, conclusory allegations, all of which are no more than restatements of the original cause of action.  As the Seventh Circuit has held when the alleged actions by defendants are "just as consistent with a lawful investigation as an illegal conspiracy," dismissal is appropriate.  *McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011) (citing *Brooks v. Ross*, 578 F.3d 574, 581-82 (7th Cir. 2009)).  In this case, the defendants' behavior, as described by the Willans, is no less consistent with reasonable efforts to identify and remedy zoning or building code violations than it is with a conspiracy to target and persecute a specific family.  Accordingly, defendants are also entitled to judgment in their favor on the Willans' equal protection claim.

**IV. State Law Claims**

Finally, the Willans assert tort claims under state law for malicious prosecution, civil conspiracy, and intentional infliction of emotional distress. Because all federal claims against defendants are being dismissed, however, and the state actions are *not* central to the complaint, this court is generally encouraged to decline to exercise supplemental jurisdiction over these remaining state claims. *Al's Service Center v. BP Products North America, Inc.*, 599 F.3d 720, 727 (7th Cir. 2010) ("When all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims"). If they so choose, the Willans may prosecute these claims in state court.

ORDER

IT IS ORDERED that:

1) The Defendants' (County of Dane, "DCZ," Joe Parisi, Todd Violante, Roger Lane, Pam Andros, and Sarah Johnson) motion for judgment on the pleadings (dkt. #9) is GRANTED.

2) The clerk of court is directed to enter final judgment in defendants' favor.

3) Plaintiffs' motion for issuance of subpoena (dkt. #16) is DENIED as moot.

Entered this 27th day of May, 2020.

BY THE COURT:

/s/
_____
WILLIAM M. CONLEY
District Judge